**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KALEB AVALOS-LANDEROS, by his parents and next friends, DIDIER AVALOS and SANDRA LANDEROS, and DIDIER AVALOS and SANDRA LANDEROS, individually,** ) ) ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **vs.** ) ) | **Case No. 11 C 2204** |
| **UNITED STATES OF AMERICA, et al.,** ) ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Kaleb Avalos-Landeros, a young child, and his parents have sued multiple

defendants for injuries they claim Kaleb sustained during his birth and post-partum care,

as well as the prenatal care his mother received. Plaintiffs have brought eighteen

claims against a host of defendants for professional negligence, negligence based on a

*res ipsa loquitur* theory, and "specific negligence" (a term the parties use in their briefs)

related to a head injury plaintiffs allege Kaleb received during his post-partum care. The

following defendants have now moved separately for summary judgment or partial

summary judgment: EPC Healthcare Staffing, Inc.; Mount Sinai Community

Foundation; Mount Sinai Hospital Medical Center of Chicago; and a group including

Sodexo, Inc., Sodexo America, LLC, Sodexo Management, Inc., Sodexo Operations,

LLC, Sodexo Vending Services, LLC, and Sodexo's employee Heather Vaule Evans.

For the following reasons, the Court grants each motion in part and denies it in part.

**Background**

Kaleb was born on August 27, 2008 at Mount Sinai Hospital Medical Center of Chicago (the Hospital). After his birth, he was a patient in the Neonatal Intensive Care Unit (NICU) of the Hospital until September 18, when he was discharged from the hospital. After Kaleb was born, several neonatologists who work for the Mount Sinai Community Foundation (the Foundation) provided care and treatment to Kaleb. Records reflect he also received visits from Heather Vaule Evans, a dietician who worked for the Sodexo defendants (Sodexo), on August 29, September 5, and September 12, 2008. Another record indicates that a nurse employee of EPC worked in the Hospital's NICU on August 31, during Kaleb's stay there, although it does not indicate whether the nurse provided care to Kaleb during that time.

Kaleb's condition while in the NICU is disputed by some if not all defendants. Plaintiffs allege that Kaleb experienced a skull fracture during his stay there. On September 5, 2008, Kaleb underwent an MRI exam. Kenneth Ekechukwu, a radiologist (presumably working at the Hospital) who interpreted the exam that day, wrote that Kaleb had a "focal contusion of the left occipital bone with a focal nonpropagated linear fracture." Pls.' Ex. Q at 1. Dr. Ekechukwu further wrote that the contusion "is associated with edema of the left occipital and temporal lobes and multiple intraparenchymal hematomas of the left frontal lobe," adding that the largest hematoma was 9.9 millimeters long. *Id.* Under the "Impression" section of Dr. Ekechukwu's report, he wrote: "There is a constellation of findings highly suggestive of substantial external impact to the left occiput with direct injury to the left occipital and temporal lobes

2

associated with intra-axial countercoup phenomena of the left frontal lobe and left middle cranial fossa subdural hemorrhage." *Id.*

Plaintiffs have employed three experts who have opined regarding Kaleb's condition during his stay in the NICU. Each has concluded that Kaleb likely suffered skull and brain injuries, probably or possibly during his NICU stay. One of them, Dr. Patrick Barnes, a pediatric neuroradiologist, opined that Kaleb suffered an external impact on the back of his head, fracturing his skull and causing brain damage, at some point between August 29 and September 5, 2012. Upon questioning during his deposition, Dr. Barnes stated that the earliest he would place Kaleb's injury was 2:19 p.m. on August 29, because the external impact to Kaleb's head occurred not more than seven days before his MRI at 2:19 p.m. on September 5.

Dr. Stephen Glass, another expert, opined in a letter "by neuroradiology opinion" that "an external traumatic head and brain injury in the form of a documented left parietal skull fracture" occurred "1-7 days" prior to the MRI, which took place on September 5. Pls.' Ex. A at 12. During his deposition, Dr. Glass specified what he meant in saying "by neuroradiology opinion": "The diffusion weighted imaging abnormality I'm comfortable with. The timing as far as the blood related findings, I would want their collaboration and opinion, yes. For the bleeding part alone and the date and timing based on blood, I would turn to their input." Sodexo Ex. C at 119. He also stated that the data from the MRI "tends to weight the occurrence of this bleed closer to the seven—closer to the one day, as opposed to seven days" prior to the MRI. *Id.* at 120. He continued: "So I think it's closer proximity to when the seizures happened . . . . Closer to the seizure and therefore closer to the MRI, rather than the

outside limit of distance from the MR." *Id.*

A third doctor, William Hay, Jr., also opined in a report that based on the MRI, Kaleb likely sustained a "substantial external impact injury to his head that caused a skull fracture and brain contusion (bruising of the brain), intracranial hemorrhage (bleeding into the brain), and brain injury."  Pls.' Ex. I at 1.  Dr. Hay stated in his report that "the age of the blood" seen in the MRI "was 1 to 7 days old," which meant the impact to Kaleb's skull "occurred sometime between August 29 and September 4."  *Id.* at 2.  He continued,

> Because neurological signs most often occur very soon after a traumatic injury with intracranial bleeding, it is more likely that the intracranial hemorrhages seen on the September 5 2008 MRI very closely preceded the clinical signs noted on September 4th, probably within the previous several hours to at most a 24 hour period.

*Id.*

Plaintiffs filed their second amended complaint in July 2012.  Of the eighteen counts in the complaint, ten are relevant here.  Plaintiffs have brought two claims for intra-partum professional negligence, two claims of *res ipsa loquitur*, and two specific negligence claims against the Hospital, as well as two *res ipsa* claims and two specific negligence claims against EPC, the Foundation, and Sodexo collectively.  In October 2013, plaintiffs submitted an agreed motion to dismiss four individual defendants— Foundation employees—who plaintiffs alleged were nurses at the Hospital during the period of Kaleb's care there.  Defendants filed the summary judgment motions at issue here in January 2014.

## Discussion

Summary judgment is appropriate if "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding motions for summary judgment, a court must give "the non-moving party the benefit of conflicts in the evidence and any reasonable inferences from the evidence." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 786 (7th Cir. 2014). A court also "must determine whether the evidence, so construed, establishes genuine disputes of material fact with respect to" plaintiffs' claims. *Harper v. Fulton Cnty.*, 748 F.3d 761, 765 (7th Cir. 2014). A genuine dispute of material fact "exists only if there is enough evidence upon which a reasonable [finder of fact] could return a verdict in" the non-movant's favor. *Swetlik v. Crawford*, 738 F.3d 818, 826 (7th Cir. 2013).

In Illinois, a plaintiff asserting a common law negligence claim "must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Choate v. Ind. Harbor Belt R.R. Co.*, 2012 IL 112948 ¶ 22, 980 N.E.2d 58, 64 (2012). The term "duty" means "a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* The elements of breach and proximate cause "are factual matters for the [finder of fact] to decide, provided there is a genuine issue of material fact regarding those issues." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430, 856 N.E.2d 1048, 1054 (2006). Proximate cause "is a question of fact for the [finder of fact] unless there is no material issue regarding the matter or only one conclusion is clearly evident." *Williams v. Univ. of Chi. Hosps.*, 179 Ill. 2d 80, 88, 688 N.E.2d 130, 134 (1997).

As for negligence claims based on *res ipsa loquitur*, a plaintiff "must plead and prove that he or she was injured (1) in an occurrence that ordinarily does not happen in

the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control." *Heastie v. Roberts*, 226 Ill. 2d 515, 531–32, 877 N.E.2d 1064, 1076 (2007). On the second element, the phrase "exclusive control" is "interchangeable" with the term "management and control"; "the requisite control is not a rigid standard, but a flexible one in which the key question is whether the probable cause of the plaintiff's injury was one which the defendant was under a duty to the plaintiff to anticipate or guard against." *Id.* Whether the *res ipsa* doctrine applies in a given case is "a question of law," meaning it "must be decided in the first instance by the trial court." *Id.*

Further, on a motion for summary judgment against *res ipsa* claims, the plaintiff "only ha[s] to present enough evidence to raise an issue of fact as to whether [defendant] had control over the instrumentality which caused [plaintiff's] injuries." *Gatlin v. Ruder*, 137 Ill. 2d 284, 298, 560 N.E.2d 586, 592 (1990). The plaintiff need not "eliminate all other possible causes of his injuries"; rather, "[t]he [finder of fact] must determine who proximately caused" them. *Id.* at 298, 592. "If the defendant controverts the plaintiff's evidence that the injury ordinarily does not happen in the absence of negligence, that dispute does not provide grounds for taking the issue away from the [finder of fact]." *Adams v. Family Planning Assocs. Med. Grp., Inc.*, 315 Ill. App. 3d 533, 546, 733 N.E.2d 766, 776 (2000). Rather, "[f]actual disputes presenting credibility questions or requiring evidence to be weighed should not be decided by the trial judge as a matter of law," but "should be resolved by the [finder of fact]." *Id.*

## A.  EPC

EPC has moved for summary judgment on all four claims against it:  two claims of specific negligence and two claims of negligence on a *res ipsa loquitur* theory.  In

general, EPC contends that "Plaintiffs are unable to provide expert medical testimony that demonstrates that an act or omission by EPC caused the alleged injuries." EPC Mem. at 1. With regard to the *res ipsa* claims specifically, EPC argues that plaintiffs cannot show EPC had "exclusive control" of Kaleb during his stay in the NICU. *Id.* at 2.

### 1. Specific negligence

On plaintiffs' two specific negligence claims against it, EPC argues initially that it cannot possibly have been negligent in causing a skull fracture to Kaleb, because it had no employees working in the NICU during the window plaintiffs' experts have established for the injury. As discussed above, that period appears to be August 29 to September 5, 2008.

In response, plaintiffs point to EPC's payroll records for the Hospital, which indicate that at least one EPC employee in the category "RN" worked in the NICU there on August 31. *See* Pls.' Ex. RRR. From this evidence, plaintiffs contend that "there is sufficient evidence to prove negligence through specific acts," Pls.' Resp. to EPC Mot. at 6, because Kaleb's skull was fractured; the fracture occurred during the August 29 to September 4 period; Kaleb was staying in the NICU at that time; and an EPC employee worked in the NICU at least one day during that period. EPC's employee, plaintiffs argue, "would have had access to Kaleb and may have even cared for him during the August 29-September 4 time period." *Id.* at 8. Therefore, plaintiffs base their negligence claims against EPC on the "reasonable inference" that the EPC employee "had access to and controlled Kaleb." *Id.* Plaintiffs also cite the deposition of Joanne Leslie, who was director of pediatrics at the Hospital during Kaleb's time there. Leslie testified in her deposition that nurses in the NICU covered for other nurses "throughout

the day"; she would not expect it to be noted in a patient's record if one nurse covered for another in the NICU.  Pls.' Ex. WW at 99.

Plaintiffs' evidence is sufficient to show a dispute of material fact as to whether Kaleb was injured as the result of someone's negligence.  Plaintiffs have presented no evidence, however, regarding who that person was or how it happened.  Plaintiffs point to the fact that an EPC nurse may have worked in the NICU during Kaleb's stay there and that it is common for nurses to cover for their fellows during a given shift.  But those two facts constitute the entirety of plaintiffs' argument regarding EPC's involvement in Kaleb's injury.  Plaintiffs do not allege any actual contact with or care of Kaleb on the part of the unidentified nurse, only that the nurse "could have caused Kaleb's skull injury."  Pls.' Resp. to EPC Mot. at 6.  There is no evidence of a connection between the unnamed EPC employee and the injury; it is not show a dispute of fact to argue that "the EPC nurse working in the NICU on August 31 would have had access to Kaleb and may have even cared for him."  *Id.* at 8.  There is "no material issue" on the question of whether EPC breached its duty to Kaleb or proximately caused Kaleb's injury.  *Williams*, 179 Ill. 2d at 88, 688 N.E.2d at 134.

It is true, as plaintiffs argue, that a plaintiff may establish negligence through direct or circumstantial evidence.  *See Barkei v. Delnor Hosp.*, 176 Ill. App. 3d 681, 693, 531 N.E.2d 413, 421 (1988).  This, however, is not a case where the parties have clashed on breach or causation.[1]  Rather, plaintiffs have speculated there was both

---

[1] Also, in *Barkei*, on which plaintiffs rely, the court noted that the defendant's evidence "conflicted with that of plaintiffs and raised questions of the credibility of witnesses with regard to the issue of proximate cause," which "were properly submitted to the jury for resolution."  176 Ill. App. 3d at 694, 531 N.E.2d at 421.  Plaintiffs have presented no such evidence here; their evidence does not conflict with plaintiffs' on the questions of

breach and causation, without direct or circumstantial evidence suggesting either. The existence of Kaleb's skull fracture alone indicates nothing directly or indirectly of EPC's involvement in inflicting it. A reasonable fact finder could not find in plaintiffs' favor on this question. The Court thus concludes that summary judgment for EPC on plaintiffs' specific negligence claims is warranted.

**2.** ***Res ipsa loquitur***

For some of these same reasons, plaintiffs fare differently on their *res ipsa loquitur* negligence claims against EPC. Although plaintiffs have presented no evidence regarding the EPC employee's involvement in Kaleb's injuries, they have established the existence of a genuine factual dispute regarding whether the employee at any point provided care for Kaleb in the NICU and thus "had control over the instrumentality which caused [plaintiff's] injuries." *Gatlin*, 137 Ill. 2d at 298, 560 N.E.2d at 592.

As described above, a *res ipsa* negligence claim requires a plaintiff to show that the injury would not have occurred without negligence and that the injury occurred via an instrumentality within the defendant's or defendants' exclusive control. *See Heastie*, 226 Ill. 2d at 531–32, 877 N.E.2d at 1076. EPC does not dispute the first element but rather argues that plaintiffs cannot show "that the multiple defendants named exerted exclusive control over Kaleb, the instrumentality." EPC Mem. at 6. Yet plaintiffs do not at this stage have to demonstrate this fact convincingly; they do not "have to eliminate all other possible causes of his injuries." *Gatlin*, 137 Ill. 2d at 298, 560 N.E.2d at 592.

---

whether EPC's employee breached EPC's duty to Kaleb and whether this breach proximately caused Kaleb's injury.

That is a matter for trial.[2]  It is sufficient for plaintiffs to offer evidence from which one reasonably can infer that the various parties who tended to or may have tended to Kaleb during his time in the NICU could have had control over him, even if the person or thing that caused the skull fracture is unknown, because that is precisely the point—the person or thing that caused the fracture is unknown.  Here, plaintiffs contend that EPC's unidentified nurse worked in the NICU during the period plaintiffs' experts say the fracture could have occurred, and they have offered evidence that NICU nurses often cover for their colleagues with various patients.  Whether this particular nurse actually had anything to do with Kaleb's injury is an issue of fact to be determined at trial.

EPC contends that "[f]ailure to name all persons or entities which exerted control over the instrumentality is fatal to a res ipsa loquitur claim, as exclusive control cannot be proven."  EPC Mem. at 9.  It cites *Loizzo v. St. Francis Hosp.*, 121 Ill. App. 3d 172, 459 N.E.2d 314 (1984), for this proposition  But the case that does not actually say this, although it does discuss the exclusive control element.  *Loizzo* says, on the page EPC cites, that a *res ipsa* theory "has been held not applicable against multiple defendants where it was not shown that they were in joint or exclusive control of the injuring agency."  *Id.* at 179, 319.  That may be true, but it does not mean that a *res ipsa* claim

_____

[2] EPC's other cases do not counsel otherwise.  They do not address the question of a *res ipsa* claim on summary judgment, as *Gatlin* does, and they are of a significantly older vintage.  *See Metz v. Cent. Ill. Elec. & Gas Co.*, 32 Ill. 2d 446, 448–49, 207 N.E.2d 305, 307 (1965); *Brock v. Vancil*, 340 Ill. App. 432, 441, 92 N.E.2d 526, 530 (1950).  In *Brock*, the court noted that "the evidence affirmatively shows that the appellants had no control of the incubator, the instrumentality from which the accident arose."  *Id.*  EPC has made no such showing here; it is disputed whether the EPC employee had any control over Kaleb.  Further, in *Metz*, the Illinois Supreme Court said that "it is for the trier of fact to weigh the evidence and determine whether the circumstantial evidence of negligence has been overcome by defendant's proof."  *Metz*, 32 Ill. 2d at 449–50, 207 N.E.2d at 307.  That is the same point made in *Gatlin*, even if *Metz* does not address the summary judgment context.

lacks merit if it fails to name every single possible defendant who could have caused a particular injury. Rather, the control of various parties over the instrumentality and whether it was exclusive present factual questions that defendants are free to contest in front of the trier of fact; "the trier of fact should decide who maintained control." *Gatlin*, 137 Ill. 2d at 298, 560 N.E.2d at 592. Plaintiffs need "only . . . to present enough evidence to raise an issue of fact as to whether" EPC through its employee "had control over the instrumentality" causing Kaleb's injuries. *Id.* at 297, 591. In addition, EPC's rationale for this proposed rule misstates a plaintiff's burden when facing summary judgment. At this stage of the litigation, plaintiffs need not "prove[ ]" that defendants in this case had exclusive control of Kaleb. *See* EPC Mem. at 9. Rather, "[i]t is for the trier of fact to determine which defendant had control" of Kaleb when he was injured, "and for the trier of fact to decide whether plaintiff's injuries were proximately caused by the negligence of any of the defendants." *Samansky v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 208 Ill. App. 3d 377, 388, 567 N.E.2d 386, 393 (1990).

Similar to the above argument, EPC also contends that a plaintiff making a *res ipsa* claim must "not exert control over the instrumentality himself." EPC Mem. at 9. EPC contends that Kaleb's parents and their friends had some control over him while he was in the NICU and thus that their *res ipsa* claim against EPC is without merit. For this proposition, EPC cites *Bernardi v. Chi. Steel Container Corp.*, 187 Ill. App. 3d 1010, 1022, 543 N.E.2d 1004, 1013 (1989). In that case, however, the court held first that *res ipsa* was inapplicable "[f]or this reason alone": "fires frequently have causes other than negligence." *Id.* Further, in *Bernardi*, control of the dangerous entity that injured the plaintiff "was plainly divided between" the plaintiff and the defendant, in that the plaintiff

controlled the engine compartment of the vehicle that injured him, and the plaintiff's agent controlled the ignition system. *Id.* Here, the division between Kaleb's parents and friends on one side and the other defendants and unnamed entities on the other is far from plain. Rather, the issue of who had control over Kaleb during the relevant period is properly characterized as being genuinely disputed among the parties, such that it is appropriate for resolution by the trier of fact. For these reasons, EPC is not entitled to summary judgment on plaintiffs' *res ipsa loquitur* claims.

**B.     Mount Sinai Community Foundation**

Similar to EPC, the Foundation argues that it is entitled to judgment as a matter of law on plaintiffs' specific negligence and *res ipsa* claims. On the specific negligence claims, the Foundation contends that plaintiffs have presented no evidence that any breach it may have committed proximately caused Kaleb's injury. On plaintiffs' *res ipsa* claims, the Foundation argues that neither element of *res ipsa* is present in this case. It says that Kaleb's injury had potential causes other than negligence and that plaintiffs cannot show that the Foundation's employees had exclusive control of Kaleb during the relevant period.

**1.     Specific negligence**

As they did in response to EPC's summary judgment motion, plaintiffs contend they have enough evidence to prove the Foundation's negligence toward Kaleb through specific acts—although they do not identify what those acts were specifically. Plaintiffs again posit that Kaleb suffered a skull fracture and resulting brain damage while in the NICU, and they argue that those working in the NICU owed Kaleb a duty not to injure him in that way. Yet that is where plaintiffs' argument ends; they do not allege or even

suggest any particular act by a Foundation employee.  For its part, the Foundation

argues that "[t]he assumption of causation, namely how the breach of the duty occurred

to produce harm, cannot rest solely on the existence of some harm.  There must be

some affirmative evidence to support such allegations."  Foundation Mem. at 5.

The Foundation's is the more persuasive argument.  Plaintiffs do not present a

genuine dispute about whether the Foundation's employees breached their duty to

Kaleb and whether such a breach proximately caused his injuries.  Rather, they

contend, in essence, that Kaleb was injured in the NICU, and thus someone who

worked in the NICU must be responsible.  But this supposition is not evidence,

circumstantial or otherwise, creating a dispute of material fact about whether the

Foundation's employees breached a duty to Kaleb that proximately caused his injuries.

It is, as the Foundation argues, more appropriately geared toward a *res ipsa* claim.  The

Court concludes that a reasonable fact finder could not find in favor of plaintiffs on their

specific negligence claim against the Foundation due to lack of a genuine dispute of

material fact on the issue of whether Foundation employees breached a duty to Kaleb

and proximately caused his injuries.  The Court therefore grants the Foundation

summary judgment on plaintiffs' specific negligence claims.

### 2.    *Res ipsa loquitur*

The Foundation disputes plaintiffs' ability to prove either element of its *res ipsa*

*loquitur* claim.  It argues that they cannot show Kaleb's injury was of a type not normally

caused by something other than negligence or that the Foundation had exclusive

control of Kaleb.  As with EPC's arguments on this claim, however, the Foundation is in

essence attacking the factual strength of plaintiffs' *res ipsa* claim; it has not shown the

absence of a genuine dispute over its application to the facts. On the first *res ipsa* element, the Foundation contends that Kaleb had brain injuries that predated his stay in the NICU that were "unrelated to any alleged substantial external impact." Foundation Mem. at 9. It points to various maladies with which Kaleb was diagnosed at or before his birth, prior to Foundation employees' period of care for Kaleb in the NICU, and it contends that there is "sufficient evidence to explain Kaleb's injuries in the absence of negligence by" the Foundation. *Id.* at 8.

Yet that is not the standard on summary judgment. The Foundation must show a lack of a dispute of material fact such that no reasonable fact finder could find in favor of plaintiffs. Plaintiffs allege, with supporting medical expert testimony, that Kaleb suffered a skull fracture that fell outside the standard of medical care in the NICU and they would not have happened without the negligence of someone caring for Kaleb. Those arguments correspond to the two elements of *res ipsa loquitur*. In response, the Foundation makes factual arguments about how and when Kaleb sustained his injuries. But as the Court has said, the Illinois Supreme Court requires only that a plaintiff "present enough evidence to raise an issue of fact"; the plaintiff does "not have to eliminate all other possible causes of [plaintiff's] injuries." *Gatlin*, 137 Ill. 2d at 297–98, 560 N.E.2d at 591–92. Plaintiffs have done that through expert evidence interpreting Kaleb's MRI, among other deposition testimony. This evidence is sufficient to show a dispute of material fact as to whether Kaleb's injury could have occurred without negligence.

The story is similar on the second element of plaintiffs' *res ipsa* claim, namely that defendants were in exclusive control of the instrumentality at issue (Kaleb). The

Foundation contends that plaintiffs have "not satisfied this element of control," Foundation Mem. at 11, listing several other individuals who "had control over Kaleb at various times," including his own parents, *id.* at 12. In response, plaintiffs say that Foundation employees in the NICU provided care to Kaleb during his time there.

As above, the Foundation does not state the proper test for its motion. Plaintiffs do not have to "satisf[y] this element of control" to avoid summary judgment. Rather, they allege Foundation employees worked in the NICU and provided care to Kaleb during the time when they argue his skull injury occurred. The Foundation's arguments that other individuals also had control over Kaleb at this time, and that Foundation employees did not have exclusive control, involve factual disputes and are inappropriate grounds for summary judgment.[3] Plaintiffs need "only . . . to present enough evidence to raise an issue of fact as to whether" the Foundation through its employees "had control over the instrumentality" causing Kaleb's injuries. *Gatlin*, 137 Ill. 2d at 297, 560 N.E.2d at 591. By offering evidence that the Foundation's employees worked in the NICU and provided care to Kaleb, a fact the Foundation does not deny, plaintiffs have sufficiently shown a dispute of material fact on this issue sufficient to avoid summary judgment on its *res ipsa* claims against the Foundation.

## C. Mount Sinai Hospital Medical Center

The Hospital argues it is entitled to summary judgment on plaintiffs claims'

---

[3] Further, the Foundation in its reply asserts that plaintiffs are attempting to confuse the issue of Kaleb's injury by equating a "skull fracture" with a "brain injury," which the Foundation asserts are two different things. Foundation Repl. at 1–2. However, the allegation of a skull fracture visited upon Kaleb during his time in the NICU is clearly alleged in plaintiff's second amended complaint. The question of whether Kaleb suffered a skull fracture that caused his brain injuries or whether those injuries predated a skull fracture involves, as the Court has stated, a dispute of material fact.

regarding its nurses' professional negligence during Kaleb's mother's labor and delivery; on its alleged negligent development and implementation of chain and command policies for nurses and residents; on the negligence of its employees in the Hospital's NICU; and on its allegedly negligent communication, documentation, and investigation of Kaleb's alleged injury.

### 1.    Labor and delivery negligence

The Hospital first contends that plaintiffs have not established the appropriate standard of care for its labor and delivery nurses or that the nurses deviated from that standard in a way that caused Kaleb's injuries.  In response, plaintiffs argue first that the Hospital's argument is "premature" because they have not yet deposed defendants' experts, who potentially could "opine that the negligence of the labor and delivery nurses caused or contributed to cause Kaleb's injuries."  Pls.' Resp. to Hospital Mot. at 7–8.  Second, plaintiffs say the Hospital's motion violates an agreement the Hospital reached with them.  Plaintiffs contend they dismissed four labor and delivery nurse defendants from the case without prejudice by agreement with the Hospital and may seek to refile their claims against these nurses.  If they were to do so, plaintiffs argue, they "should also be able to name the employer of these nurses, Hospital, under . . . *respondeat superior.*"  *Id.* at 7.  Plaintiffs contend that summary judgment for the Hospital at this point on plaintiffs' labor and delivery negligence claims would "take[ ] this right away from Plaintiffs and destroys Plaintiffs' counsel's agreement with Hospital relating to voluntarily dismissing the labor and delivery nurses."  *Id.*  Plaintiffs make no argument about any disputes of material fact that may or may not exist on plaintiffs' labor and delivery negligence claims against the Hospital.

The Court will address plaintiffs' argument that the Hospital's motion is "premature" below in section E, because plaintiffs have made or incorporated that argument against multiple defendants. As for plaintiffs' argument about their agreement with the Hospital, the Hospital argues that "Plaintiffs' argument that granting summary judgment precludes them from naming the employer of the nurses under *respondeat superior* is nonsensical. They have already done so." Hospital Repl. at 2. The Hospital has a point. Plaintiffs are essentially arguing the Court should deny the Hospital's motion because it might wish to sue the Hospital later, even though the Hospital is already a named defendant. For this reason, granting summary judgment to the Hospital on plaintiffs' labor and delivery negligence claim could not "violate" any "agreement" plaintiffs may have had with the Hospital. *See* Pls.' Resp. to Hospital Mot. at 7. As the Hospital argues, plaintiffs are still free to reassert this claim against any defendants it may have dismissed without prejudice.

Without any other argument from plaintiffs on the merits of this claim against the Hospital, there is no genuine dispute of material fact regarding whether the Hospital was negligent in its nurses' care for Kaleb during labor and delivery. The Court therefore grants summary judgment in favor of the Hospital on these claims.

### 2.    Negligent development / implementation of chain of command policy

The Hospital next argues that plaintiffs have not produced any evidence that the Hospital was institutionally negligent in failing to develop and implement chain of command policies for its labor and delivery nurses and residents. In response, plaintiffs contend that a Hospital resident, Dr. Rocio Abreu, failed to inform the attending physician that Kaleb was in distress and failed to urge the attending physician to

perform an emergency cesarean section to deliver Kaleb.  "If the jury [sic] determines that Dr. Abreu failed to implement this policy during the early morning hours of August 27, 2008," plaintiffs argue, "and that Dr. Abreu's failure to implement this policy caused, or contributed to cause Kaleb's hypoxic-ischemic encephalopathy and/or hypoglycemia, [the] Hospital is negligent for failing to implement this policy."  Pls.' Resp. to Hospital Mot. at 9.

Plaintiffs argue that its allegations "relate to the 'Residents Contacting Attending' policy of Hospital."  *Id.*  Their citation for this statement points to a written policy that appears to have been issued by the Hospital.  The document, which is headed with the words "Hospital Policy and Procedure," states that it was established in June 1987 and effective in January 1991.  *See* Pls.' Ex. PPP.  The subject line of the policy sheet says "Residents contacting attending."  *Id.*  Under the word "POLICY," the document lays out eight requirements for hospital staff, including this one:  "Any significant change in patient status is to be immediately communicated to the patient's attending and to be documented."  *Id.*  This is almost exactly the policy plaintiffs claim the Hospital did *not* develop and implement, an argument belied by the document plaintiffs themselves submit as evidence.

Plaintiffs appear to be arguing that Dr. Abreu was negligent in failing to report issues in Kaleb's birth, but they frame this as a claim against the Hospital for institutional negligence.  Plaintiffs' second amended complaint alleges that the Hospital "[f]ail[ed] to develop a chain of command policy" for nurses and residents and also failed to implement one.  2d Am. Compl. Count V, ¶ 57; *see also id.* Count VI, ¶ 57.  The next paragraph of the complaint is a distinct allegation against Abreu specifically, which has

nothing to do with the Hospital's policy. Plaintiffs now argue that Abreu "failed to implement" the policy. That is not an institutional negligence claim. Plaintiffs do not refer to any evidence that the Hospital itself failed to develop or implement this policy, and indeed, plaintiffs' own evidence shows the Hospital did implement such a policy.

This evidence leads the Court to conclude that there is no dispute of material fact on whether the Hospital developed and implemented such a policy—it did—and thus that no reasonable fact finder could find in favor of plaintiffs on this aspect of their professional negligence claims against the Hospital.

### 3. Specific negligence in the NICU

The Hospital argues that "[t]here is no evidence that the Hospital breached a duty of care while providing services to Kaleb in the NICU." Hospital Mem. at 7. Although plaintiffs' experts discussed possible causes of Kaleb's possible skull fracture, the Hospital contends, "plaintiffs have not identified any tangible negligent act or omission by the Hospital that proximately caused the alleged skull fracture and brain injury." *Id.* In response, plaintiffs say nothing about how and whether the Hospital's employees could have been involved in visiting an injury upon Kaleb in the NICU. Instead, they incorporate the arguments they made against the Foundation's summary judgment motion. Those arguments fail here for the same reasons the Court discussed previously. Plaintiffs have not introduced any evidence, direct or circumstantial, about who or what caused the skull fracture they allege Kaleb suffered. They have therefore not shown the existence of a dispute of material fact on whether the Hospital, through its employees in the NICU, breached a duty to Kaleb or proximately caused his injuries. The Court concludes that a reasonable fact finder could not find in plaintiffs' favor on its

specific negligence claims against the Hospital and therefore grants the Hospital summary judgment on those claims.

### 4. *Res ipsa loquitur* in the NICU

The Hospital argues that plaintiffs cannot prevail on their *res ipsa loquitur* claims because "Kaleb's injuries were caused, and could have been caused, by things other than the defendants' alleged negligence." Hospital Mem. at 4. The Hospital points to plaintiffs' experts opinions about various causes that may have or did contribute to Kaleb's brain damage, such as hypoglycemia, hypoxic ischemic encephalopathy, and thrombocytopenia. In addition, the Hospital argues, citing plaintiffs' expert Dr. Glass, "that skull fractures are not unexpected during the normal labor and delivery process and that skull fractures occur during caesarean deliveries." *Id.* at 5.

The Hospital's arguments are targeted at the first element of *res ipsa loquitur* in Illinois, which is that the injury in question was "an occurrence that ordinarily does not happen in the absence of negligence." *Heastie*, 226 Ill. 2d at 531–32, 877 N.E.2d at 1076. Plaintiffs respond by citing both "common knowledge" and their experts' opinions that babies staying do not "ordinarily sustain skull fracture [sic] and brain bleeding in the NICU absent negligence." Pls.' Resp. to Hospital Mot. at 11. They also contend that their experts have opined that the impact to Kaleb's skull occurred within seven days of the MRI he received on September 5, 2008 and thus could not have occurred during his birth on August 27.

The parties' dispute over whether plaintiffs can satisfy this element of their *res ipsa* claims against the Hospital is appropriately described as a dispute of material fact. Plaintiffs have "present[ed] evidence reasonably showing facts exist that allow an

inference that the occurrence is one that ordinarily does not occur in the absence of negligence." *Adams*, 315 Ill. App. 3d at 545, 733 N.E.2d at 776. The Hospital has cited contrary evidence, arguing that "there is evidence that skull fractures occur during the normal birth process," Hospital Repl. at 5, but plaintiffs need not prove their case on a motion for summary judgment. They need not "eliminate all other possible causes of [Kaleb's] injuries." *Gatlin*, 137 Ill. 2d at 298, 560 N.E.2d at 592. That is the province of the trier of fact. It is not fatal to plaintiffs' case that their experts testified in depositions that skull fractures can occur at birth; as noted above, plaintiffs argue that the same experts state that the skull fracture likely occurred within a range of days that post-date Kaleb's birth. The Court concludes there is a genuine issue of material fact on the question and denies summary judgment to the Hospital on plaintiffs' *res ipsa* claims.

**5.      Failure to communicate, document, or investigate NICU incident**

Finally, the Hospital contends that summary judgment is appropriate on plaintiffs' claim that the Hospital failed to communicate, document, or investigate a NICU occurrence that injured Kaleb, because there is no evidence of such an occurrence. The Hospital adds that even if it was bound to communicate such an occurrence and failed to do so, this failure could not have caused Kaleb's injuries, because such a duty and breach would necessarily have followed the injury-causing incident. Plaintiffs respond that the Hospital "ignore[s] the facts" because it "never conducted an investigation into how Kaleb sustained his skull fracture" and never filed an incident report about it. Pls.' Resp. to Hospital Mot. at 13. Plaintiffs assert that failure to inform Kaleb's parents was "a violation of Hospital policy," and that violations of hospital policy are "admissible for reasons other than establishing the standard of care or negligence."

*Id.* at 14.

The Court observes that plaintiffs' complaint does not appear to accuse the Hospital of failing to communicate, document, or investigate an incident in the NICU regarding Kaleb. None of the claims against the Hospital in plaintiffs' second amended complaint mentions such a failure. The Hospital appears to be responding to deposition testimony by two of plaintiffs' experts rather than to an allegation in plaintiffs' complaint. *See* Hospital Mem. at 7 (citing Hospital LR 56.1 Stat. ¶ 14, which cites deposition testimony of Dr. Hay and plaintiffs' nurse expert).[4] The specific negligence claims in the complaint, for example, discuss how the Hospital's "foregoing negligence" proximately resulted in Kaleb's "skull fracture and permanent brain damage." 2d Am. Compl. Count XV, ¶ 136; *id.* Count XVI, ¶ 136. The claims do not make reference to an injury to Kaleb after the skull fracture and brain damage.

Regardless, the Hospital is correct that allegedly negligent behavior to communicate, document, or investigate an incident cannot possibly have caused the incident. Plaintiffs argue in response to the Hospital on this topic that the Hospital violated its own policy in failing to report the alleged incident, the fact of which is admissible. Perhaps so, but that has little to do with plaintiffs' actual claim, namely that the Hospital was negligent in causing Kaleb's skull fracture in the NICU. Plaintiffs also cite their nursing expert's opinion that investigation of Kaleb's "head and brain injuries" was important because Kaleb needed follow-up care and to be checked for

---

[4] This is borne out by the Hospital's motion for partial summary judgment. In this motion, the Hospital does not point to a particular count of the complaint when referring to plaintiffs' supposed argument that the Hospital was negligent in communicating, documenting, and investigating a NICU incident involving Kaleb, though it does refer to counts of the complaint when referring to plaintiffs' other arguments. *See* Hospital Mot. at 1–2.

complications.  Pls.' Resp. to Hospital Mot. at 13–14.  Yet plaintiffs are not asserting specific negligence claims relating to Kaleb's follow-up care or complications in the NICU; they argue that the Hospital's negligence caused Kaleb's skull fracture.  If this is in fact a claim by plaintiffs, they have nonetheless failed to show the existence of a dispute of fact as to whether the Hospital's failure to investigate Kaleb's injury in the NICU was the proximate cause of that injury.

**D.    Sodexo**

Like the other defendants discussed here, Sodexo has moved for summary judgment on plaintiffs' specific negligence and *res ipsa loquitur* claims.  Plaintiffs have alleged that Sodexo's employee Evans had access to Kaleb in the NICU in her role as a clinical dietician and thus could have caused his injuries.

**1.    Specific negligence**

Sodexo contends that plaintiffs cannot establish that Sodexo through its employee Evans proximately caused Kaleb's injuries.  It points out that Evans testified in a deposition that she saw Kaleb on August 29 and September 5, 2008.  From this, Sodexo contends Evans did not see Kaleb during the time he was injured, because plaintiffs' expert Dr. Hay opined "that the alleged external impact occurred during the 24 hours prior to the seizures," which occurred on September 4.  Sodexo Mem. at 5. Sodexo also argues that Dr. Glass and Dr. Barnes, who reviewed Evans's deposition testimony, did not think Evans could have caused the skull fracture and brain injury or did not consider Evans "as someone who may have caused Kaleb's alleged injuries." *Id.*  Plaintiffs respond that Evans provided care to Kaleb during the time his skull injury and brain bleeding occurred and that the standard of care for Evans required her to not

fracture Kaleb's skull.

As before, plaintiffs stop their argument there. They do not discuss any evidence regarding the breach or causation elements of their specific negligence claim against Sodexo and Evans. Plaintiffs maintain that "[t]he question of when this skull injury occurred, and who caused the skull injury, are questions of fact which will be resolved by the finder of fact." Pls.' Resp. to Sodexo Mot. at 8. Actually, those are questions on which plaintiffs are required to show the existence of a dispute of material fact in order to avoid summary judgment on their claims of specific negligence against Sodexo. As noted earlier, proximate cause is an element of a negligence claim. Because plaintiffs offer no evidence at all of the cause of Kaleb's skull fracture, no reasonable fact finder could find in plaintiffs' favor on that claim.

### 2. *Res ipsa loquitur*

Sodexo contends, focusing on the timeline for Kaleb's injury, that plaintiffs cannot satisfy either element required of their *res ipsa* theory of negligence. It argues that Evans's only visit to Kaleb before his seizures occurred was on August 29, and that during that visit, NICU staff members were present and performed measurements on Kaleb. Therefore, Sodexo says, plaintiffs cannot show Evans "demonstrated the requisite control" over Kaleb sufficient for a *res ipsa* claim. Sodexo Repl. at 12. Elsewhere in its memoranda, Sodexo contends there is no possible way Evans saw Kaleb within the time frame that plaintiffs' experts established for his injury. Sodexo says that Dr. Barnes places the injury only as far back as 2:19 p.m. on August 29, 2008, and it points out that Evans testified she typically saw NICU patients in the morning. Even though Evans saw Kaleb on August 29, Sodexo argues, she "could not have

rendered care to Kaleb . . . at any point within Dr. Barnes [sic] time frame for when this impact allegedly occurred," because Dr. Barnes would not place the injury before 2:19 p.m. on that day. Sodexo Mem. at 6. Sodexo also contends that plaintiffs' two other expert opinions on the injury time frame point in a similar direction, because Dr. Glass "opined the brain bleed occurred closer to the date of the MRI" despite opining that the external impact occurred one to seven days before the September 5, 2008 MRI. *Id.* at 3. Dr. Hay, Sodexo argues, opined that the injury was "not something that occurred days before" the MRI. *Id.* at 4.

Citing an Illinois appellate court case, Sodexo argues that "it must be shown that the injury can be traced to a specific instrumentality or cause for which the defendant is responsible or that the defendant was responsible for all reasonable causes to which the accident could be attributed." Sodexo Mem. at 10 (quoting *Napoli v. Hinsdale Hosp.*, 213 Ill. App. 3d 382, 388, 572 N.E.2d 995, 998 (1991)). As with other defendants' arguments on this point, this statement does not accurately describe a plaintiff's task when facing a motion for summary judgment on its *res ipsa* claim. In *Gatlin*, which the court in *Napoli* writing one year later did not cite, the Illinois Supreme Court held that plaintiffs need "only . . . to present enough evidence to raise an issue of fact as to whether [the defendant] had control over the instrumentality which caused" harm to the plaintiff. 137 Ill. 2d at 297, 560 N.E.2d at 591. It also held that the plaintiff "did not have to eliminate all other possible causes of his injuries," which is essentially the opposite of what the appellate court said in *Napoli*. *Id.* at 298, 560 N.E.2d at 592. *Res ipsa*, after all, is a theory of negligence for a plaintiff who necessarily cannot show with specificity which defendant might have caused the injury or exactly how it

happened.  As the Illinois Supreme Court framed it in *Heastie*:

> Illinois law does not require a plaintiff to show the actual force which
> initiated the motion or set the instrumentality in operation in order to rely
> on the *res ipsa* doctrine.  To the contrary, if the specific and actual force
> which initiated the motion or set the instrumentality in operation were
> known unequivocally, leaving no reason for inference that some other
> unknown negligent act or force was responsible, the *res ipsa* doctrine
> could not even be invoked.

226 Ill. 2d at 539, 877 N.E.2d at 1080.  Here, the instrumentality in question is Kaleb;

plaintiffs allege that one or more of the agents charged with Kaleb's care in the NICU

negligently caused his skull fracture.  Sodexo is in reality posing a question of fact

concerning whether its employee could have been responsible for injuring Kaleb

through negligence.

As for Sodexo's arguments about the timing of Kaleb's injury, its citations to the

statements of plaintiffs' experts do not place causation of Kaleb's injury by Evans

outside the realm of possibility.  It is true that Dr. Barnes would not place Kaleb's injury

before 2:19 p.m. on August 29 and that Evans testified she typically saw NICU patients

in the morning.  Yet Dr. Glass did not place such a specific time limit on the outside of

the seven-day range he assigned to the injury.  As Sodexo argues in its reply, "[t]he

August 29, 2008 date is at the most outside limit of time from the MRI referenced by Dr.

Glass." Sodexo Repl. at 4.  Even if Dr. Glass later stated in a deposition that the injury

likely happened closer to the time of the MRI or said he relied on opinions of others in

providing the one-to-seven-day range, Sodexo has not shown that Dr. Glass *ruled out*

the injury occurring on August 29.  Given that fact, this is not a situation in which there is

no dispute of material fact.  Indeed, the timing of the injury is among the key facts at

issue on plaintiffs' claims.  Sodexo has not shown that no reasonable fact finder could

find for plaintiffs on their *res ipsa* claims, and thus the Court declines to grant summary judgment to Sodexo on those claims.

**E.     Rule 56(d)**

Finally, in responses to most of the motions at issue here, plaintiffs argue that the Court's granting of summary judgment on plaintiffs' specific negligence claims would be "premature" at this time.  Pls.' Resp. to Hospital Mot. at 7.  Plaintiffs say that they "seek to defer resolution of those portions of the motions pursuant to Fed. R. Civ. Pro. 56(d)," because they have not yet deposed defendants' experts.  Pls.' Resp. to Foundation Mot. at 15.  "It is possible," plaintiffs argue, "that specific evidence of how Kaleb sustained the substantial external impact will be discovered during these deposition [sic]."  *Id.*

Federal Rule of Civil Procedure 56(d) permits a nonmovant to "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  To begin with, plaintiffs have presented no such affidavit or declaration; the Seventh Circuit has affirmed district court decisions to deny Rule 56(d) motions for that reason.  *See First Nat'l Bank & Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 693 (7th Cir. 2004); *see also Grayson v. O'Neill*, 308 F.3d 808, 815 (7th Cir. 2002) (under Rule 56(d), "a party must file an affidavit stating the reasons why he cannot respond to a summary judgment movant's affidavits").[5]  More importantly, not even in their memoranda do plaintiffs contend that the depositions they seek would uncover "essential" information for their opposition.  Plaintiffs have not pointed to any specific information they believe the experts will reveal, let alone information that is "essential."  The Court also notes that the cutoff date for plaintiffs to take these

---

[5] At the time of *First Nat'l Bank & Trust Corp.* and *Grayson*, Rule 56(d) was known as Rule 56(f).

depositions—June 3, 2014—has now come and gone. Plaintiffs have not provided any motion or other filing indicating that they wish to amend their responses based on any information revealed in the depositions. The Court therefore declines to defer ruling on the motions discussed above based on Rule 56(d) or the purported prematurity of the motions.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part the summary judgment motions of EPC, the Foundation, the Hospital, and Sodexo. Specifically, the Court grants EPC's motion [docket no. 271] on counts 17 and 18 (specific negligence); the Foundation's motion [docket no. 277] on counts 17 and 18 (specific negligence); the Hospital's motion [docket no. 278] on counts 5 and 6 (intra-partum professional negligence) and 15 and 16 (specific negligence); and Sodexo's motion [docket no. 283] on counts 17 and 18 (specific negligence). The Court otherwise denies the motions. The case is set for a status hearing on June 30, 2014, at 9:30 a.m. for the purpose of discussing the anticipated length of the bench trial in this case.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  June 20, 2014